CHARLES ALLAS, PLAINTIFF-APPELLANT, v. BOROUGH OF RUMSON, A MUNICIPAL CORPORATION, IMPLEADED, DEFENDANT-RESPONDENT.

Argued October 2, 1934—Decided January 24, 1935.

Before BROGAN, CHIEF JUSTICE, and Justices PARKER and BODINE.

For the appellant, *Theodore D. Parsons*.

For the respondent, *Harold McDermott*.

The opinion of the court was delivered by

PARKER, J. This is an appeal from a judgment of nonsuit at the trial as against the respondent, borough of Rumson. Two individual defendants were joined, with a separate count in the complaint as to each, but the result of the action so far as they are concerned does not seem to be before us.

The case arose out of the following circumstances: The plaintiff was at the borough hall in connection with identifying prisoners at police headquarters and was injured while leaving by falling into an unguarded sunken ramp in the

dark. He sought to hold the borough respondent in damages and the nonsuit was awarded on the theory that if there was any negligence of the municipality in maintaining its premises in an unsafe condition, it was negligence for which the municipality under a long line of decisions is not liable.

The physical conditions would be more readily understood if a map or sketch had been submitted with the case, but none was put in evidence. However, the photographs make the situation fairly clear. The building, used for a borough hall and offices, was a long brick building facing the south, and in front of which was a public highway at a few feet distance. There were flights of steps or stoops at the middle of the front and of the back of the building and also at the east and west ends. The middle section of the building was used exclusively for the borough hall and offices. The westerly end was assigned for the use of the police department and had its own separate entrance at the west end. The easterly end of the building was rented out by the borough to the national government as a post office. It was closed off from the rest of the building as effectively as one house in a brick row is closed from another and had its own stoop at the east end. In connection with this stoop there seems to have been a small telephone booth which was there under contract with the telephone company and the municipality, used for a pay station, and the municipality received a small commission on the tolls. At the back or north side of the building was a yard and leading down into it from the middle of the building was a stoop corresponding to that in front. At the west end of this stoop were steps leading downward from the yard into a sunken area some three or four feet wide, the exact dimensions are immaterial, and leading westward along the basement of the building to another flight of steps near the northwest corner which led up into a small door giving access to the police department. There were two entrances to the police department, one by way of the stoop at the west end of the building, and the other through this areaway and the two flights of steps. In the basement of the police department at the northwest corner was a small garage for auto-

mobiles entered by a double swinging door, and in order to drive an automobile into this basement garage, the floor of which was (at a guess) from five to six feet below the level of the ground, the borough had constructed a depressed ramp some thirty or forty feet in length (here again the exact dimensions are not material), beginning that distance from the northwest corner of the building at the ground level and running downward into the basement garage. On each side of this depressed ramp was a concrete retaining wall, the top of which was level with the ground. What happened, according to the plaintiff's story, was that he was guided by a policeman into the police department through the back yard and down the steps into the area and up the steps out of it into the police offices, and when he had finished made his exit alone by the same route. In order to get home it was necessary for him then, on reaching the ground level, to turn from the foot of the main rear steps westward to reach a private roadway which ran along the west end of the building, and led out to the highway. It was dark and in so doing he walked over one of the retaining walls and fell into the ramp, injuring himself, there being no railings or other protective device to guard the depressed roadway.

The foregoing are the material facts with regard to the operation of the building and the occurrence of the accident.

The claim of liability on the part of the defendant was rested on two grounds; first, that there was active negligence in the construction of a dangerous situation; and secondly, that because the building was in part used for purposes not connected with the municipal government and rent received for the same, the borough was liable as in the line of cases relating to municipalities operating for profit. The trial judge thought that neither of these grounds was tenable and we agree with him. The claim of user for profit was based on the renting of the room at the east end for a post office, but, as has been said, this was closed off from the rest of the building and connected with the outer air by its own special entrance which had nothing to do with the use of the rest of the building by the municipality. The telephone

pay station was located on this post office section and was equally separate from the portion of the building used for municipal purposes. The plaintiff's business at the borough hall had absolutely nothing to do with either the post office or the telephone, and in fact that was at the farther end of the building from both. We see no ground of liability here.

The case stands no better on the theory of active negligence. The borough either built the building or adapted it for borough purposes and in so doing happened to create a condition which was unsafe as regards the public at large, but not the result of active wrongdoing affecting an individual as in *Kehoe* v. *Rutherford,* 74 *N. J. L.* 659.

The present case is precisely within the line of *Freeholders of Sussex* v. *Strader,* 18 *N. J. L.* 108, where the report says: "The case agreed upon by the parties, shows that the damage was sustained by reason of the team of the plaintiff running off the abutment of a public bridge, which was without side railings or parapets." The rule laid down in that case is, of course, familiar to every practicing lawyer.

In the later case of *Hart* v. *Freeholders of Union,* 57 *N. J. L.* 90, a declaration was overruled as to negligence, but sustained because of a count charging the active creation of a nuisance by making an excavation in a public road.

A recent case of negligence in a public building operation is that of *Johnson* v. *Wildwood,* 102 *N. J. L.* 606, where the borough built a defective wall which was caused to fall down by the weight of coal behind it.

In the Massachusetts case, *Bigelow* v. *Inhabitants, &c.,* 14 *Gray* 541, the board of education caused a hole to be dug in the school playground and a child fell into it.

In these cases the rule was reiterated that the municipality was not responsible for negligence in the doing of a public work.

The Common Pleas properly ordered a nonsuit as to the municipality and the judgment is therefore affirmed.